◼ In the Matter of JULIUS GATTNER, Petitioner, v ROBERT P. WHALEN, as Commissioner of the New York State Department of Health, Respondent. (Proceeding No. 1.) In the Matter of JULIUS GATTNER, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent. (Proceeding No. 2.)—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Broome County) to review a determination, after a hearing, of the New York State Commissioner of Health imposing a $3,000 penalty upon petitioner under subdivision 4 of section 3391 of the Public Health Law and withholding the right to the issuance of official State prescriptions by petitioner (Proceeding No. 1). Proceeding initiated in this court, pursuant to subdivision 4 of section 6510-a of the Education Law, to review a determination of the Board of Regents revoking petitioner's license to practice medicine (Proceeding No. 2). Petitioner, 85 years old, has engaged in the practice of medicine in Endicott, New York, for approximately 40 years. Pursuant to articles 1, 2 and 33 of the Public Health Law, on March 14, 1977, he was served with a notice of hearing and statement of charges, informing him

that a hearing would be held relative to his alleged violations of the Public Health Law. He was notified therein of his right to appear "in person or by representative, with or without counsel" and of his possible liability for a civil penalty not to exceed $1,000 for each violation found. The statement of charges enumerated three alleged violations of article 33 of the Public Health Law: two instances of unlawfully issuing a prescription for the controlled substance Seconal, "not in good faith and not in the course of his professional practice and not for legitimate medical purposes", and similarly unlawfully issuing prescriptions for the controlled substances Meprobamate and Nembutal during the period from June 8, 1974 to May 25, 1975. Petitioner appeared without counsel at the hearing held on March 29, 1977. Testimony was received from Investigators Matthews and Clark of the State Department of Health with respect to two Seconal prescriptions obtained by Investigator Matthews from petitioner on May 17, 1976 and May 24, 1976 at his office, without a physical examination or medical history. Investigator Clark testified to his analysis of 110 prescriptions issued by petitioner to his patients, George and Emily Bunnell, between June 8, 1974 and May 27, 1975 for the controlled substances Nembutal, Meprobamate, and Empirin Compound with Codeine. Based on the witness' tabulations, 74 of these prescriptions were issued before a prescription for the same substance should have been exhausted according to the prescribed dosages. Petitioner asked one question of each witness and testified briefly on his own behalf. The hearing officer concluded that petitioner unlawfully issued prescriptions to Investigator Matthews on May 17 and 24, 1976 in violation of section 3304, subdivision 1 of section 3335 and subdivision 2 of section 3331 of the Public Health Law and failed to regulate dosages and prescribe appropriate amounts of controlled substances with respect to the Bunnells in violation of 10 NYCRR 80.62. Pursuant to the findings and recommendation of the hearing officer, the State Commissioner of Health ordered assessment of a civil penalty in the sum of $3,000, revocation and cancellation of official New York State prescriptions issued to petitioner and withholding of further prescriptions. In Proceeding No. 1, petitioner seeks to annul this determination. On or about September 26, 1977 the State Board for Professional Medical Conduct charged petitioner with professional misconduct within the meaning of section 6509 of the Education Law. In the notice of hearing and statement of charges, four specifications involving fraudulent practice of the profession with respect to seven patients and Investigator Matthews, gross negligence and gross incompetence with respect to two patients, and negligence and incompetence with respect to two patients were alleged. It was claimed that petitioner practiced the profession fraudulently in that he unlawfully supplied inordinate quantities of the drugs Darvon and Valium; unlawfully wrote two prescriptions for Seconal without a physical examination; and unlawfully prescribed inordinate quantities of the drugs Nembutal 1¼ grains and Meprobamate and Empirin Compound with Codeine. It was further alleged that petitioner practiced the profession with gross negligence and gross incompetence in that he failed to diagnose and treat one patient and improperly diagnosed and treated another patient, resulting in the deaths of both patients. The above-described incidents were also the basis for charges of negligence and incompetence on more than one occasion within the meaning of subdivision (2) of section 6509 of the Education Law and professional misconduct within the meaning of subdivision (9) of section 6509 of the Education Law. At the hearing before a panel of the State Board for Professional Medical Conduct, at which petitioner was represented by counsel, medical expert witnesses testified on behalf of

both petitioner and respondent. Their testimony related to the charges of alleged gross negligence and gross incompetence in the diagnosis and treatment of two elderly female patients who both died after being admitted to Lourdes Hospital in Binghamton, New York, by Dr. Gattner. The Department of Health's expert witness, Dr. William Contini, opined that petitioner's care of the two patients was inadequate. His opinion was based upon petitioner's failure to mention medication taken by the patients in the medical history, failure to record a diagnostic impression upon admission, inadequacy of the initial diagnosis, failure to actually treat the diagnosed conditions and lack of neurological consultation for a patient who was diagnosed by petitioner as suffering from a neurological illness. Dr. Contini further testified that the fact that a consultant is called in to a case does not necessarily relieve the attending physician of responsibility for care of the patient. Also testifying on behalf of the State agency were Investigators Matthews and Clark who essentially repeated the testimony they gave before the Health Department hearing officer. The hearing panel found that petitioner had practiced the profession with gross negligence and gross incompetence and with negligence and incompetence on more than one occasion as to both patients. Petitioner was also found guilty of unprofessional conduct on the basis of these incidents. The panel recommended revocation of petitioner's license to practice medicine. The State Commissioner of Health accepted the findings of fact, conclusions and recommendations of the hearing panel in full, and, thereafter, the Board of Regents issued an order revoking petitioner's license to practice medicine. In Proceeding No. 2, petitioner challenges that determination. Petitioner's first contention in Proceeding No. 1 is that he was denied due process by the lack of counsel at the administrative hearing. We disagree. In our view, petitioner, after being notified in writing by the notice of hearing and advised by the hearing officer of his right to counsel, knowingly and intelligently waived such right. The hearing officer carefully questioned petitioner to ascertain whether he knew he had a right to counsel and whether he intended to waive such right, and throughout the hearing, the hearing officer made every effort to insure that petitioner received a fair hearing. We conclude that when petitioner, an educated person, decided to proceed without counsel, he waived his right to counsel (see *Matter of Di Marsico v Whalen,* 68 AD2d 971). Petitioner's reliance upon criminal cases involving the waiver of counsel is misplaced. Such cases are inapplicable to administrative hearings in which different rules apply *(Matter of Brown v Lavine,* 37 NY2d 317; *Matter of Di Marsico v Whalen, supra).* The record contains substantial evidence to support the determination of the Commissioner of Health that petitioner violated article 33 of the Public Health Law. Investigator Matthews, posing as a drug addict, entered petitioner's office and demanded Seconal without explanation in order to see whether petitioner would enter a prescription under those circumstances. While petitioner states that he was unnerved by Matthews' conduct and issued a prescription in order to get rid of him, this is not evidence of active inducement by Matthews. Assuming, *arguendo,* that the defense of entrapment is available to petitioner, we find no merit in his contention that evidence of violations of the Public Health Law was improperly obtained by entrapment. The record is devoid of any evidence to support petitioner's contention that he was actively induced by Investigator Matthews to commit an act that he otherwise would not have committed. Finally, we conclude that the determination of the Board of Regents is in all respects supported by substantial evidence. The hearing panel heard the testimony of three medical experts

and petitioner. It sifted the conflicting testimony and decided that petitioner's treatment and care of two patients amounted to gross negligence and gross incompetence. Upon this record, we cannot say that the board's determination was so devoid of a factual basis as to be arbitrary, capricious or irrational. As in Proceeding No. 1, we reject petitioner's defense of entrapment. We have examined petitioner's other contentions and find them unpersuasive. In Proceeding No. 1, determination confirmed, and petition dismissed, without costs; in Proceeding No. 2, determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Greenblott, Kane and Mikoll, JJ., concur; Main, J., not taking part.